## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ANDEIA COWAN, LUIS SHEPHERD, HOLLY VIOLA, ALEXSANDRA CERDA, CYNTHIA HOGAN, DEBBIE VONGPHACHANH, TEBYTHA CHAN, LAVADA FALLON, and ELIZABETH FREEDMAN, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

     v.

WINDMILL HEALTH PRODUCTS, LLC, QUICKTRIM, LLC, KIMBERLY KARDASHIAN, KHLOE KARDASHIAN-ODOM, KOURTNEY KARDASHIAN, CHRISTOPHER TISI, CVS PHARMACY, INC., WAL-MART STORES, INC., GNC CORP., WALGREEN CO., AMAZON.COM, INC., and DRUGSTORE.COM, INC.,

                    Defendants.

Case No. 1:12-CV-1541-VM
ECF CASE

**AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**TABLE OF CONTENTS**

**PAGE**

I.  NATURE OF THE ACTION ................................................................................. 1

II.  PARTIES ........................................................................................................... 3

III.  JURISDICTION AND VENUE ........................................................................... 5

IV.  FACTS COMMON TO ALL CAUSES OF ACTION .......................................... 5

    A.  The QuickTrim Weight Loss System............................................................ 5

    B.  Unsubstantiated Claims Of Safety And Efficacy ........................................ 8

    C.  The Kardashian Sisters' Marketing And Promotion Of QuickTrim ...................... 11

        1.  The Kardashians' Pre-Launch Announcements............................................12

        2.  The September 21, 2009 Life & Style Cover Story.........................................15

        3.  The October 16, 2009 Launch At The GNC Store In Hollywood .................16

        4.  Print Advertisements................................................................................16

        5.  Television Appearances ...........................................................................26

        6.  Twitter Advertisements............................................................................29

    D.  QuickTrim Products Are Illegally Distributed And Misbranded Under Federal Law ................................................................................................. 34

    E.  Windmill's Role ........................................................................................ 36

    F.  QuickTrim LLC And Mr. Tisi's Role......................................................... 37

    G.  The Retailers' Roles.................................................................................. 37

V.  FACTUAL ALLEGATIONS CONCERNING CLASS REPRESENTATIVES ........... 38

    A.  Andeia Cowan's Purchase Of QuickTrim ................................................. 38

    B.  Luis Shepherd's Purchase Of QuickTrim .................................................. 39

    C.  Holly Viola's Purchase Of QuickTrim....................................................... 39

    D.  Alexsandra Cerda's Purchase Of QuickTrim............................................. 40

    E.  Cynthia Hogan's Purchase of QuickTrim .................................................. 40

    F.  Debbie Vongphachanh's Purchase Of QuickTrim ...................................... 41

    G.  Tebytha Chan's Purchase Of QuickTrim.................................................... 42

    H.  LaVada Fallon's Purchase Of QuickTrim .................................................. 42

    I.  Elizabeth Freedman's Purchase Of QuickTrim ........................................... 43

VI.  CLASS REPRESENTATION ALLEGATIONS ................................................ 43

    COUNT I: Magnuson-Moss Warranty Act,
        15 U.S.C. § 2301, *et seq*..................................................................... 45

i

STATE LAW COUNTS ............................................................................... 46

CALIFORNIA ............................................................................................ 46

    COUNT II: Consumers Legal Remedies Act,
        Calif. Civil Code §§ 1750, *et. seq.* ............................................ 46

    COUNT III: Unfair Competition Law,
        Bus. & Prof. Code §§ 17200 *et seq.* ........................................ 47

    COUNT IV: False Advertising Law,
        Cal. Bus. & Prof. Code § 17500 *et seq.* .................................. 48

    COUNT V: Breach of Express Warranty,
        Cal. Com. Code § 2313 ............................................................ 49

    COUNT VI: Breach of Implied Warranty of Merchantability,
        Cal. Com. Code § 2314 ............................................................ 50

    COUNT VII: Unjust Enrichment ............................................................ 51

COLORADO ............................................................................................ 52

    COUNT VIII: Colorado Consumer Protection Act,
        Col. Rev. Stat. § 6-1-101 *et seq.* ............................................ 52

    COUNT IX: Breach of Express Warranty,
        Col. Rev. Stat. § 4-2-313 ......................................................... 54

    COUNT X: Breach of Implied Warranty of Merchantability,
        Col. Rev. Stat. § 4-2-314 ......................................................... 55

    COUNT XI: Breach of Common Law Warranty ...................................... 56

FLORIDA ................................................................................................ 57

    COUNT XII: Florida Deceptive and Unfair Trade Practices Act,
        Fla. Stat. §501.201 *et seq.*. ...................................................... 57

    COUNT XIII: Breach of Express Warranty, Fla. Stat. § 672.313 ............... 59

    COUNT XIV: Breach of Implied Warranty of Merchantability,
        Fla. Stat. § 672.314 ................................................................. 60

    COUNT XV: Breach of Contract/Common Law Warranty ....................... 61

ILLINOIS ................................................................................................ 62

    COUNT XVI: Illinois Consumer Fraud and Deceptive Business Practices Act,
        815 Ill. Comp. Stat. 505/1, *et seq.* and 720 Ill. Comp. Stat. 295/1A ..... 62

    COUNT XVII: Illinois Uniform Deceptive Trade Practices Act,
        815 Ill. Comp. Stat. 510/1, *et seq.* and 720 Ill. Comp. Stat. 295/1A .... 63

    COUNT XVIII: Breach of Implied Warranty of Merchantability,
        810 Ill. Comp. Stat. 5/2-314, and 810 Ill. Comp. Stat. 5/2A-212 ....... 64

    COUNT XIX: Breach of Express Warranty,
        810 Ill. Comp. Stat. 5/2-313 .................................................... 65

COUNT XX: Breach of Contract ................................................................ 66

NEVADA ........................................................................................................ 67

COUNT XXI: Nevada Deceptive Trade Practices Act,
Nev. Rev. Stat. §598.0903 *et seq.* ........................................ 67

COUNT XXII: Breach of Express Warranty,
Nev. Rev. Stat. §104.2313 ................................................... 68

COUNT XXIII: Breach of Implied Warranty of Merchantability,
Nev. Rev. Stat. §104.2314 ................................................... 69

COUNT XXIV: Breach of Contract/Common Law Warranty ..................................... 70

COUNT XXV: Breach of Implied Covenant of Good Faith and Fair Dealing ............. 71

NEW YORK ..................................................................................................... 72

COUNT XXVI: Deceptive Acts or Practices,
New York Gen. Bus. Law § 349 ........................................... 72

COUNT XXVII: Breach of Express Warranty,
N.Y. U.C.C.§ 2-313 ............................................................ 72

COUNT XXVIII: Breach of Implied Warranty of Merchantability,
N.Y. U.C.C. § 2-314 ........................................................... 73

COUNT XXIX: Breach of Contract/Common Law Warranty ..................................... 75

VII.   PRAYER FOR RELIEF ............................................................................... 75

VIII.  DEMAND FOR JURY TRIAL ...................................................................... 76

Plaintiffs Andeia Cowan, Luis Shepherd, Holly Viola, Alexsandra Cerda, Cynthia Hogan, Debbie Vongphachanh, Tebytha Chan, LaVada Fallon, and Elizabeth Freedman, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers the QuickTrim Weight Loss System and its component products ("QuickTrim"), which is marketed by the Defendants as a clinically proven formula that will increase metabolism, curb appetite, and promote weight loss.  In fact, QuickTrim's main ingredient is a large dose of caffeine, which the FDA has determined is not a safe or effective treatment for weight control.  QuickTrim's caffeine pills are mixed with a variety of herbal ingredients that have never been clinically proven as effective treatments for weight loss or appetite suppression.

2.      Defendants have marketed QuickTrim through a multimedia advertising campaign featuring reality TV star Kim Kardashian and her sisters, Khloe Kardashian-Odom and Kourtney Kardashian, whose images adorn QuickTrim's labels and nearly every advertisement for the product.  The Kardashians claim to have formulated and tested QuickTrim "to make sure that this was something that really works."  They sell the products directly through their own websites.  They also solicit sales of the products through their Twitter accounts, by disseminating "tweets" hawking QuickTrim, which direct recipients to websites where the products are purchased.

3.      QuickTrim's labeling and advertising represents that QuickTrim products (a) are effective for "weight loss," (b) use "research proven ingredients," (c) "safely work[]

1

to help burn calories [and] curb cravings," (d) that the "sustained release formula allows for greater absorption and controlled release of nutrients providing optimum calorie burning," (e) are "synergistically designed to work together" with other QuickTrim formulas, (f) "Help[] Cleanse and Detoxify," (g) "Help[] Jump-Start Weight Loss," (h) "Help[] Reduce Belly Bloating," (i) "Help[] Jump Start Your Weight Loss," (j) "Help[] Burn More Calories by Day," (k) will "Flush Out [your] System Overnight," (l) "stimulate[] metabolism to burn more calories and fat through the day," (m) "help[] to release and burn stored fat," (n) "help[] to remove toxins and impurities out of your system," (o) "help[] remove excess water from under the skin," (p) "Help[] Block Excess Sugar & Carbs," (q) "Help[] Curb Carbohydrate Cravings," (r) ""increase the body's ability to burn stored fats and decrease the appearance of cellulite while helping increase firmness and elasticity," (s) "Increase[] lipolytic effect by 630%," (t) "Release[] stored lipids at adipocytes 1064%," (u) "Reduce[] indentation by 9.5%," (v) "Reduce[] roughness by 32.4%," (w) "Decrease[] fat deposits by 33%," (x) "Help[] increase circulation to problem areas," (y) "Help[] tone, smooth and firm skin," (z) "attack[] cellulite by breaking down excess fat stored in the cells," (aa) "[are] scientifically designed and clinically shown to work with your body naturally to help increase your ability to burn calories," and also to "reduce carbohydrate cravings," (bb) "ha[ve] been clinically tested and shown to increase metabolism by burning 278 calories (on average) per day" (hereafter, the "Express Warranties" or the "Misrepresentations").

4.    Each of the Express Warranties is false, misleading, and unsubstantiated. There is no competent and reliable scientific evidence supporting any of these claims. The products in fact are not effective for any of these purposes. Nor are the products suitable or fit for any of these intended purposes.

2

5.      Plaintiffs are purchasers of QuickTrim who assert claims for violation of the

Magnuson Moss Warranty Act, for breach of express warranty, breach of the implied

warranty of merchantability, for unjust enrichment, and for violation of the consumer

protection laws of the states of California, Florida, New York, Illinois, Colorado, and

Nevada, on behalf of themselves and similarly situated purchasers of QuickTrim.

## PARTIES

6.      Plaintiff Andeia Cowan is a citizen of New York who resides in Hempstead,

New York.

7.      Plaintiff Luis Shepherd is a citizen of Florida who resides in Miami Beach,

Florida.

8.      Plaintiff Holly Viola is a citizen of Florida who resides in Paradise Isle,

Florida.

9.      Plaintiff Alexsandra Cerda is a citizen of California who resides in Paso

Robles, California.

10.      Plaintiff LaVada Fallon is a citizen of California who resides in Elk Grove,

California.

11.      Plaintiff Elizabeth Freedman is a citizen of California who resides in Santa

Monica, California.

12.      Plaintiff Cynthia Hogan is a citizen of Illinois who resides in Joliet, Illinois.

13.      Plaintiff Debbie Vongphachanh is a citizen of Colorado who resides in

Arvada, Colorado.

14.      Plaintiff Tebytha Chan is a citizen of Nevada who resides in Beatty, Nevada.

15.     Defendant Windmill Health Products, LLC ("Windmill") is a New Jersey limited liability company with its principal place of business at 6 Henderson Drive, West Caldwell, NJ 07006.

16.     Defendant QuickTrim, LLC (a/k/a Quick Trim, LLC) is a Florida limited liability corporation with its principal place of business and mailing address at 3750 Investment Lane, Suite 2, West Palm Beach, FL 33404.

17.     Defendant Kimberly Kardashian is a citizen of New York residing in Manhattan.

18.     Defendant Khloe Kardashian-Odom is a citizen of California residing in Beverly Hills, California.

19.     Defendant Kourtney Kardashian is a citizen of New York residing in Manhattan.

20.     Defendant Christopher Tisi is a citizen of Florida residing in West Palm Beach, Florida.

21.     Defendant CVS Pharmacy, Inc. is a Delaware corporation with its principal place of business at One CVS Drive, Woonsocket, RI 02895.

22.     Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business at 702 S.W. Eighth Street, Bentonville, AR 72716.

23.     Defendant GNC Corp. is a Delaware corporation with its principal place of business at 300 Sixth Avenue, Pittsburgh, PA 15222.

24.     Defendant Walgreen Co. is a Illinois corporation with its principal place of business at 200 Wilmot Road, Deerfield, IL 60015.

25.     Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, WA 98109.

26.     Defendant Drugstore.com, Inc. is a Delaware corporation with its principal place of business at 411 One Hundred and Eighth Avenue, Bellevue, WA 98004.

27.     At all times relevant to the allegations in this matter, each defendant acted in concert with, with the knowledge and approval of and/or as the agent of the other defendants within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

29.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)  because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class members is a citizen of a state different from Defendant.

30.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this district, and Defendants Kim Kardashian and Kourtney Kardashian reside in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

### The QuickTrim Weight Loss System

31.     The QuickTrim Weight Loss System includes eight component products:

(1) **QuickTrim® Extreme Burn™**, which the product's label describes as follows:  "QuickTrim® Extreme Burn™ is a powerful, advanced weight loss formula.  Using research proven ingredients, Extreme Burn™ safely works to help burn calories, curb cravings and increase energy levels!

This sustained release formula allows for greater absorption and controlled release of nutrients providing optimum calorie burning."

(2) **QuickTrim® Fast Cleanse™**, which the product's label describes as follows: "Fast Cleanse™ 48 Hour Super Diet Detox Cleansing Weight Loss Formula; •Helps Cleans And Detoxify! •Helps Jump-Start Weight Loss! •Helps Reduce Belly Bloating!"

(3) **QuickTrim® Burn & Cleanse™**, which the product's label describes as follows: "QuickTrim® Burn and Cleanse™ is a complete all day, all night weight loss system. This all in one program was designed to help transform your body for that big event or to jump-start your diet."

(4) **QuickTrim® Hot Stix™**, which the products label describes as "an antioxidant rich, delicious berry drink mix designed to provide an energizing boost to your essential water intake during your QuickTrim® weight loss program."

(5) **QuickTrim® Sugar & Carb Cheater™**, which the product's label describes as follows: "For Sugar & Carb Lovers! •Helps Block Excess Sugar & Carbs; •Helps Curb Carbohydrate Cravings; •Helps Support Weight Loss."

(6) **QuickTrim® Fast Shake™**, which the products label describes as follows: "QuickTrim® Fast Shake™ is designed to provide essential nutrition that may be lacking while dieting, as well as increase your energy levels and keep you satisfied until your next meal. This delicious drink is a state-of-the-art formula which provides vital nutrition to assist in healthy weight loss."

(7) **QuickTrim® Satisfy™**, which the product's label describes as follows: "Chocolate Fudge Soft Chew; Feel Satisfied Naturally; Helps Satisfy Between Meal Cravings."

(8) **QuickTrim® Celluslim™**, which the product's label describes as follows: "Body Sculpting Gel … •Fights Stubborn Cellulite; •Smoothes, Tones and Firms; •Spot Treatment For Problem Areas."



     32.     The labels for QuickTrim Burn & Cleanse, Extreme Burn, Fast Cleanse, Hot

Stix, and Celluslim state that each of these component products are part of a weight loss

system that has been "synergistically designed to work together" with the other QuickTrim

products:

> Slimming Solutions!
>
> All QuickTrim® formulas have been synergistically designed
> to work together and complement your lifestyle.  Whether you
> are seeking to shed a few vanity pounds, drop a dress size for a
> special occasion or are seeking a long term lifestyle program,
> QuickTrim® formulas are your slimming solutions.

The webpage title for QuickTrim LLC's websites, www.qtdiet.com, and

www.quicktriminternational.com, include a header tag for each page (which displays at the

top of most browsers when the website is displayed) that reads "QuickTrim Diet, Weight

Loss System."  The main page for both of these sites includes a large-type heading stating

"All QuickTrim® formulas have been synergistically designed to complement your

lifestyle."

**Unsubstantiated Claims Of Safety And Efficacy**

33.     Defendants' marketing and promotion of QuickTrim includes numerous unsubstantiated, false and misleading claims concerning the product's efficacy and mechanism of action.

34.     The active ingredient in QuickTrim Extreme Burn, QuickTrim Burn & Cleanse, and QuickTrim Hotstix is caffeine.  However, the FDA has determined there are inadequate data to establish general recognition of the safety or effectiveness of caffeine for the specified use of weight control.  *See* 21 C.F.R. § 310.545(a)(20).  Furthermore, the labeling, marketing, and promotion for QuickTrim contain numerous unsubstantiated claims of safety and efficacy as detailed below.

35.     The label for QuickTrim® Extreme Burn™, includes claims that it is effective for "weight loss," that is uses "research proven ingredients," and it "safely works to help burn calories [and] curb cravings," and that the "sustained release formula allows for greater absorption and controlled release of nutrients providing optimum calorie burning."  Each of these statements is false, misleading, and unsubstantiated.  There is no competent and reliable scientific evidence supporting any of these claims.  Furthermore, with respect to caffeine, the active ingredient, the FDA has in fact determined that "there are inadequate data to establish the general recognition of the safety and effectiveness" of caffeine for the specified use of weight control.  *See* 21 C.F.R. § 310.545(20).  The label also states that the product is "synergistically designed to work together" with other QuickTrim formulas.  That statement is also false, misleading and unsubstantiated because there is no competent and reliable scientific evidence of any synergistic effects when this product is used together with any other QuickTrim component product.

8

36.     The label for QuickTrim® Fast Cleanse™ includes claims that it is effective for "Weight Loss," that it "Helps Cleanse and Detoxify," that it "Helps Jump-Start Weight Loss," and that it "Helps Reduce Belly Bloating."  Each of these statements is false, misleading, and unsubstantiated.  There is no competent and reliable scientific evidence supporting any of these claims.  The label also states that the product is "synergistically designed to work together" with other QuickTrim formulas.  That statement is also false, misleading and unsubstantiated because there is no competent and reliable scientific evidence of any synergistic effects when this product is used together with any other QuickTrim component product.

37.     The label for QuickTrim® Burn & Cleanse™ includes claims that it "Helps Jump Start Your Weight Loss," "Helps Burn More Calories by Day," will "Flush Out [your] System Overnight," that it "stimulates metabolism to burn more calories and fat through the day," that it "helps to release and burn stored fat," that it "helps to remove toxins and impurities out of your system," and that it "helps remove excess water from under the skin." Each of these statements is false, misleading, and unsubstantiated.  There is no competent and reliable scientific evidence supporting any of these claims.  The label also states that the product is "synergistically designed to work together" with other QuickTrim formulas.  That statement is also false, misleading and unsubstantiated because there is no competent and reliable scientific evidence of any synergistic effects when this product is used together with any other QuickTrim component product.

38.     The label for QuickTrim® Hot Stix™ includes claims that it is "synergistically designed to work together" with other QuickTrim formulas.  That statement is false, misleading and unsubstantiated because there is no competent and reliable scientific

evidence of any synergistic effects when this product is used together with any other

QuickTrim component product.

39.     The label for QuickTrim® Sugar & Carb Cheater™ includes claims that it

"Helps Block Excess Sugar & Carbs," "Helps Curb Carbohydrate Cravings," and "Helps

Support Weight Loss."  Each of these statements is false, misleading, and unsubstantiated.

There is no competent and reliable scientific evidence supporting any of these claims.

40.     The label for QuickTrim® Celluslim™ includes the following claims:

> "Clinical studies have proven that the patented combination of
> ingredients in Celluslim™ increase the body's ability to burn
> stored fats and decrease the appearance of cellulite while
> helping increase firmness and elasticity."

> "Clinical studies show that Celluslim™'s active formulation
> with exclusive Thermoplex™ activated Xanthine Complex
> helps to fight cellulite in 7 ways!

> [1] Increases lipolytic effect by 630%

> [2] Releases stored lipids at adipocytes 1064%

> [3] Reduces indentation by 9.5%

> [4] Reduces roughness by 32.4%

> [5] Decreases fat deposits by 33%

> [6] Helps increase circulation to problem areas!

> [7] Helps tone, smooth and firm skin!

Each of these statements is false, misleading, and unsubstantiated.  There is no competent

and reliable scientific evidence supporting any of these claims.  The label also states that the

product is "synergistically designed to work together" with other QuickTrim formulas.  That

statement is also false, misleading and unsubstantiated because there is no competent and

reliable scientific evidence of any synergistic effects when this product is used together with any other QuickTrim component product.

**The Kardashian Sisters' Marketing And Promotion Of QuickTrim**

41.     Kim Kardashian is a public figure best known for her reality television appearances.  In October 2007, Kim Kardashian and her two sisters, Kourtney Kardashian and Khloe Kardashian (now known as Khloe Kardashian-Odom following her marriage to NBA player Lamar Odom) starred in a television series, "Keeping Up With The Kardashians."  The series has aired 69 episodes over six seasons and has led to a number of spin-offs, including "Kourtney and Khloe Take Miami," "Kourtney and Kim Take New York," and "Khloe & Lamar."

42.     In 2010, Kim Kardashian was the highest-paid "reality star" on television, earning an estimated $6 million for her product endorsement and special appearance contracts.  *See* www.thedailybeast.com/articles/2010/12/06/the-10-highest-earning-reality-television-stars.html?om_rid (last visited Jan. 27, 2012).  Kim's sisters Khloe and Kourtney were both also ranked in the top ten in reality star endorsement earnings.  Khloe ranked 7th with estimated 2010 earnings of $2.5 million.  And Kourtney ranked 8th, with estimated 2010 earnings of $2.5 million.

43.     The Kardashian sisters are the principal endorsers of QuickTrim.  Their images adorn QuickTrim's labels and packaging.  They appear in nearly every advertisement for the product.  Their surname is incorporated into one of the primary web addresses selling the product, www.kardashianquicktrim.com.  They promote QuickTrim on their own websites, and through Facebook and Twitter.  They personify the product.

44.     One example that illustrates the close association between the Kardashian sisters and QuickTrim is a promotional contest run by a QuickTrim distributor, defendant Windmill, featuring Kim, Khloe and Kourtney Kardashian.  Images of all three sisters were included in the print advertisement for the contest, and the top three prizes include a trip to "meet the Kardashian's during a reality show shoot."



--     **The Kardashians' Pre-Launch Announcements**

45.     On July 11, 2009, Kim Kardashian publicized a twitter message (tweet) to Tom Dowd, an executive at GNC, stating:  "Our Quicktrim cleanse will be massive!  Khloe has already lost so much weight!  I'm so proud of her."[1]

---

[1] Twitter is an online social network that enables its users to send and read text-based posts of up to 140 characters, known as "tweets."  As of February 22, 2012, Kim Kardashian had more than 13 million followers on Twitter, each of whom receives her "tweets."

46.     On July 19, 2009, Kim Kardashian announced her involvement with QuickTrim through her website, kimkardashian.celebuzz.com, in an item headlined "QuickTrim:  The Next Step In My Lifestyle Change":

> Khloe has always wanted to get in better shape and I am always looking to find anything I can to keep me fit and toned! I love my curves, and now we've found a way to keep them looking their best!  I wanted to tone up even more after months of doing my workout DVDs and lose that last five pounds I had been dying to shift!  Khloe and I found a solution with Quick Trim.
>
> Using Quick Trim helped boost my metabolism and jump start my weight loss.  The QuickTrim 14 day system comes with a complete diet and exercise program as well as recipes.  These products are great for an instant results [sic], but combining them with a great workout regime and diet plan can give you amazing longer lasting results.
>
> Quick Trim also have a 48 Hour Super Diet Detox [sic], which removes toxic build ups to help you feel healthier, more slender and rejuvenated in just 48 hours!  Detoxing your body of all toxins is the best first step to take if you plan on changing your workout regime and diet, because you can totally cleanse yourself and start afresh.  Make sure you cleanse and detox and then flush it out! You need to get rid of all the toxins!  But maybe my favorite product … the Celluslim!  You all know I've had my issues with cellulite in the past, so this one caught my eye.  It attacks cellulite by breaking down excess fat stored in the cells.
>
> I wanted to show you guys some before and after pics so you can see the difference that working out, eating healthily and using Quick Trim has made.  I've never been one for quick fixes, and I know now that losing weight, getting toned, and staying that way is completely changing your lifestyle.  Ever since I began working out and created my Fit in Your Jeans by Friday DVDs I've been inspired to keep it up!  It's definitely a lifestyle change, but when there are products available like Quick Trim, it's so much easier to lose the extra pounds you've been dying to get rid of!

http://kimkardashian.celebuzz.com/2009/07/19/quick_trim_the_next_step_in_my/ (accessed Feb. 22, 2012).

47.     Kim's statement that Celluslim "attacks cellulite by breaking down excess fat stored in the cells" was false, misleading, and unsubstantiated.  There is no competent and reliable scientific evidence supporting that claim.

48.     On July 29, 2009, Khloe Kardashian tweeted: "The Kardashian Sisters Create Miracle Diet Product: 'Quick Trim' Hey Girls!! It seems like Kim and Khloe Kardashian have teamed up with GNC"[2]

49.     On July 30, 2009, Khloe Kardashian tweeted: "Kardashian sisters, US reality TV stars, are releasing a "cleanse" with GNC (General Nutrition Centre) named Quick Trim."

50.     On August 11, 2009, Khloe Kardashian tweeted:  "Look Slim and Sexy When you absolutely, positively MUST fit into your favorite dress or jeans, QuickTrim® Fast... http://ff.im/6rQl1" and issued a second tweet: "Want to Keep up with Kim and Khloe on the Qt? Quick Trim will be hitting a store near you real soon! You and your... http://ff.im/6rS0t" and a third tweet:  "Fwd: Want to Keep up with Kim and Khloe on the Qt? Quick Trim will be hitting a store near you real soon! You and..."

51.     On August 20, 2009, Khloe Kardashian tweeted:  "Hello people! take a look at this: http://bit.ly/oTvkM /pages/kardashians-quick-trim/120364672755?ref=nf"

52.     On August 28, 2009, Khloe Kardashian tweeted:  "Look Slim and Sexy When you absolutely, positively MUST fit into your favorite dress or jeans, QuickTrim Fast... http://bit.ly/WmAmL" and issued a second tweet:  "Ludacris and Khloe in Quick Trim VIP Cabana www.qtdiet.com: http://bit.ly/RmIyI"

---

[2] As of February 22, 2012, Khloe Kardashian had more than 6 million followers on Twitter, each of whom receives her "tweets."

--   **The September 21, 2009 Life & Style Cover Story**

53.     On September 21, 2009, Khloe and Kim Kardashian appeared on the cover of Life & Style Weekly magazine for a cover story on "Kardashian Diet Secrets," which included a six-page story designed to promote the launch of QuickTrim.



54.     At page 30 of the Life & Style article, Kim responds to the question "How did QuickTrim help with the weight loss," stating "I feel like my whole metabolism is different. I don't even crave junk food anymore."

55.     At page 32 of the Life & Style article, in a list of "Kim's Fitness Tips" she claims that "QuickTrim has helped curb her cravings."

15

-- **The October 16, 2009 Launch At The GNC Store In Hollywood**

56.     On October 19, 2009, Kim & Khloe Kardashian appeared at a GNC store in
Hollywood to "launch" the marketing of QuickTrim.



-- **Print Advertisements**

57.     The print advertisements for QuickTrim generally feature three elements:
(1) statements attesting to the clinical proof of QuickTrim's efficacy for weight loss,
(2) statements suggesting QuickTrim is effective at suppressing appetite and reducing
cravings, and (3) photos of one or more of the Kardahsian sisters in a bikini or other
revealing attire.

58.     The following is an example of a print advertisement featuring Kim
Kardashian that includes claims concerning the efficacy of QuickTrim, including:  "The
formula is scientifically designed and **clinically shown** to work with your body naturally to
help increase your ability to burn calories," and also to "**reduce carbohydrate cravings**."

(bold added)  It also states:  "The blend in Extreme Burn™ has been **clinically tested and shown** to increase metabolism by burning 278 calories (on average) per day."  (bold added)



59.    The following is another example of a print advertisement featuring Kim Kardashian that includes claims concerning the efficacy of QuickTrim, including: "This advanced formula is **clinically shown** to work with your body naturally and complement your life style. …  It is designed to help **curb cravings** and support energy levels. … This powerful weight loss formula includes **research proven** ingredients …."  (bold added).



60.    The following is another example of a print advertisement featuring Kim Kardashian that includes claims concerning the efficacy of QuickTrim, including: "QuickTrim®'s key ingredients are **clinically shown** to help increase metabolism … **curb your appetite** ….  These advanced, sensible and **effective formulas** can help prevent fat absorption and support endurance levels [and] … **control cravings**." (bold added).



61.     The following is another example of a print advertisement featuring Kim Kardashian that includes claims concerning the efficacy of QuickTrim, including: "QuickTrim®'s key ingredients are **clinically shown** to help increase metabolism … **curb your appetite** ....  These advanced, sensible and **effective formulas** can help prevent fat absorption and support endurance levels [and] … **control cravings**." (bold added).



62.     The following is another example of a print advertisement featuring Khloe Kardashian that includes claims concerning the efficacy of QuickTrim, including: "QuickTrim®'s key ingredients are **clinically shown** to help increase metabolism … **curb your appetite** ….  Try QuickTrim® advanced, sensible and **effective formulas** to help prevent fat absorption and support endurance levels [and] … **control cravings**." (bold added).



..

63.     The following is another example of a print advertisement featuring Kim Kardashian that includes claims concerning the efficacy of QuickTrim, including: "QuickTrim® ExtremeBurn™'s main ingredients are **clinically shown** to work with your body naturally and complement your lifestyle.  …  It is designed to help **curb cravings** and support energy levels.  This powerful weight loss formula includes **research proven** ingredients …." (bold added).



64.     The following is another example of a print advertisement featuring Kim Kardashian that includes claims concerning the efficacy of QuickTrim, including: "**Studies show** that this exclusive formula can help you burn 3x more calories than diet and exercise alone." (bold added).



65.     The following is another example of a print advertisement featuring Kourtney Kardashian that includes claims concerning the efficacy of QuickTrim, including: "These powerful, advanced formulas help: **curb cravings** and boost your metabolism to support calorie burning and promote your energy levels." (bold added).



66.     The following is another example of a print advertisement featuring Kim Kardashian that includes claims concerning the efficacy of QuickTrim, including a statement that QuickTrim® Extreme Burn™ is "designed to … **curb your appetite**." (bold added).



67.     Each of the claims in these print advertisements are false, misleading, and unsubstantiated.  There is no competent and reliable scientific evidence supporting any of these claims.

25

**--** **Television Appearances**

68.     The Kardashian sisters have also made numerous television appearances to promote QuickTrim, including on news shows, recorded television commercials, and have also promoted QuickTrim on their own reality television shows.

69.     Kim Kardashian appeared in People Magazine's PeopleTV UpClose Video to promote QuickTrim, where she stated:

> "Hi I'm Kim Kardashian and I'm at my People Magazine shoot at the Cove Atlantis in the Bahamas.  I helped Khloe lose about 20 to 25 pounds.  She had always wanted to get in shape, and after seeing me go through my, you know, training process of my fitness DVDs, I was motivation to her.  **We formulated this new diet product called Quick Trim.**  You know, she was our trial, and it worked so well.  It changed her life and I'm so proud of her." (bold added)

70.     Kim and Khloe appeared on the KTLA Channel 5 Morning Show to promote QuickTrim.  During the appearance, Kim stated:

> "We just are so passionate about everything that we put ourselves into.  Whether it's our diet products, we make sure that we for sure use them, we tried everything, you know, and **we helped formulate this** and make sure that this was something that really works.  We don't just put our name on anything, just to have it out there, we really are involved." (bold added)

The appearance concludes with Kim stating that QuickTrim is available "at GNC, and at QTDiet.com."

71.     Khloe Kardashian appeared on XCLUSIVE LA to promote QuickTrim:

> "Interviewer:  We're keeping the beautiful theme going here at Miss Malibu, and who else could be more beautiful than Khloe Kardashian?  Khloe, you are looking absolutely gorgeous.  Now, what is your new confidence?  Anything new, different?

26

Khloe Kardashian-Odom:  The difference is I'm taking QuickTrim, which is a diet program.  And I lost 24 pounds off of it, so that's a big difference in my body!"

72.     Kim and Khloe also appear in a recorded commercial available at

www.qtdiet.com:

Kim Kardashian (voiceover): "Do you feel sexy?"

Khloe Kardashian-Odom (voiceover): "Do you have the body you've always dreamed of?"

Kim Kardashian (voiceover): "You can change the way you look."

Khloe Kardashian-Odom (voiceover): "You have the power to reinvent yourself."

Kim Kardashian (voiceover): "Create the body you deserve."

Khloe Kardashian-Odom (voiceover): "No more excuses, just results."

Kim Kardashian:  "How hot can you be?  QuickTrim – live the dream."

…

Kim Kardashian (voiceover): "Hey, this is Kim."

Khloe Kardashian-Odom (voiceover): "And Khloe Kardashian. If you guys want to be serious and lose weight and keep it off, you have to try the Burn and Cleanse 14 day system and also the Extreme Burn.  It's like, two separate systems but it's a package deal, don't you think, Kimmy?"

Kim Kardashian (voiceover): "Yeah, I tried the 14 day Burn and Cleanse, and that totally jump started my diet.  And then I finished it off with the Extreme Burn."

Khloe Kardashian-Odom (voiceover): "And it keeps it off!"

Kim Kardashian (voiceover): "It's like maintenance."

Khloe Kardashian-Odom (voiceover): "Yes, it's maintenance. Everyone needs a little maintenance honey, it's Hollywood!"

Kim Kardashian (voiceover): "Khloe, you have lost like 30 pounds on QuickTrim, you look amazing."

Khloe Kardashian-Odom (voiceover): "And Kimmy, you've definitely lost that last eight, you look fab, the bikini bod, you're my motivation in life."

Kim Kardashian (voiceover): "Thank you!  If you're totally serious about wanting to lose weight…"

Khloe Kardashian-Odom (voiceover): "And keeping it off like us…"

Kim Kardashian and Khloe Kardashian-Odom (together): "You have to get on the QuickTrim diet plan!"

73.　　On her reality show, "Khloe & Lamar," Khloe Kardashian-Odom spoke with her mother Kris Jenner about QuickTrim:

Kris Jenner:  Hi Khloe.  Can I have a little chat with you about QuickTrim?

Khloe Kardashian-Odom:  Yeah.

Kris Jenner:  I just think that way you are presenting yourself in the media lately is a little off base, and I really think that you and I need to have a chat about what you're doing to the brand.

Khloe Kardashian-Odom:  Excuse me?  What am I doing to the brand?  And how am I presenting myself to the media?

Kris Jenner:  Well, Khloe, I feel like first of all you don't care, and it's really very, very upsetting to me because I've worked so hard at creating what I feel is a great deal for you girls and then you're not pulling your end of the weight here.

Khloe Kardashian-Odom:  What are you trying to say, exactly?

Kris Jenner:  I'm trying to say that I feel like you could not chat about how many cookies you're eating in between meals….

Khloe Kardashian-Odom (voiceover):  To tell me that I'm ruining an entire brand because of my weight gain, like, that makes me feel like sh--.  Get over yourself!  You're such a f---ing raging lunatic and you're so evil.

28

Khloe Kardashian-Odom:  Are you trying to say that I'm fat and I f---ed up your sh--?

Kris Jenner: Not exactly in those words Khloe.

Khloe Kardashian-Odom:  Mom!  What the f---, honestly.  I'm too f---ing fat all the time, I'm too f---ing this, I'm too f---ing that ….  So what.  Do you want me to get pregnant?  Do you want me to lose weight?

Khloe Kardashian-Odom (voiceover):  You tell me you want me to have a baby every second.  But I can't be on some crazy diet if you want me to have a baby ….  I just don't get what you want out of me.

Khloe Kardashian-Odom:  You say things at the worst times and it's how you say it, it's f---ing mean and its hurtful.  So sorry that I'm ruining your precious little brand, Mom, I'm so sorry.  I'll just go and become bulimic and anorexic.  Thank you, bye.

**--   Twitter Advertisements**

74.     All three Kardashian sisters have promoted QuickTrim through Twitter

advertisements.

75.     Kim Kardashian has more than 13 million followers on Twitter, and she has

frequently tweeted messages promoting QuickTrim, including the following:

Last chance to enter QuickTrim's Lose to Win Contest! You can win money, prizes & meet us, register now: http://www.QuickTrimContest.com Mon Apr 04 18:34:24 +0000 2011

@CELEBUZZ @PrincessGiGi13 Aw thanks doll! I try 2 work out every morning in my Shapeups and I use QuickTrim.It's important to stay in shape Thu Apr 14 23:10:52 +0000 2011

How fabulous do these women look? http://bit.ly/gxY3Yr I'm loving these QuickTrim real life success stories!! Fri Apr 15 19:31:44 +0000 2011

Hi dolls, have you seen the QuickTrim buy one get one free sale at GNC? Just in time for bikini season! Sat Apr 23 00:02:15 +0000 2011

Starting QuickTrim today! Its officially summer. I want to really get in fab shape! Whose with me? Wed Jun 22 15:19:04 +0000 2011

Ummm FALSE! This is ridiculous! #QuickTrim RT @KimKFanNet: Report: Kim Kardashian's ice cube diet http://bit.ly/mjfz4j Sun Jun 26 17:22:44 +0000 2011

Ummm FALSE! This is ridiculous! #QuickTrim RT @KimKFanNet: Report: Kim Kardashian's ice cube diet http://bit.ly/mjfz4j Sun Jun 26 17:22:38 +0000 2011

Ok so I workout so hard, I've been eating better but now gonna kick it up w QuickTrim! I'm gonna go on the 14 day program! I want results! Thu Jul 28 16:17:00 +0000 2011

76.     Khloe Kardashian-Odom has more than 6 million followers on Twitter, and

she has frequently tweeted messages promoting QuickTrim, including the following:

The Kardashian Sisters Create Miracle Diet Product: 'Quick Trim' Hey Girls!! It seems like Kim and Khloe Kardashian have teamed up with GNC Wed Jul 29 13:36:51 +0000 2009

Kardashian sisters, US reality TV stars, are releasing a "cleanse" with GNC (General Nutrition Centre) named Quick Trim. Thu Jul 30 12:32:04 +0000 2009

I'm now listed on the Local Twitter Directory for Appin, Ontario: www.loadedweb.com/twitter/ Sat Aug 01 12:25:31 +0000 2009

Look Slim and Sexy When you absolutely, positively MUST fit into your favorite dress or jeans, QuickTrim® Fast... http://ff.im/6rQl1 Tue Aug 11 12:58:38 +0000 2009

Want to Keep up with Kim and Khloe on the Qt? Quick Trim will be hitting a store near you real soon! You and your... http://ff.im/6rS0t Tue Aug 11 13:10:08 +0000 2009

Fwd: Want to Keep up with Kim and Khloe on the Qt? Quick Trim will be hitting a store near you real soon! You and... http://ff.im/6rS4G Tue Aug 11 13:10:32 +0000 2009

Hello people! take a look at this: http://bit.ly/oTvkM /pages/kardashians-quick-trim/120364672755?ref=nf Thu Aug 20 15:37:41 +0000 2009

Look Slim and Sexy When you absolutely, positively MUST fit into your favorite dress or jeans, QuickTrim Fast... http://bit.ly/WmAmL Fri Aug 28 13:43:54 +0000 2009

Ludacris and Khloe in Quick Trim VIP Cabana www.qtdiet.com: http://bit.ly/RmIyI Fri Aug 28 13:46:05 +0000 2009

Look at kim!: http://bit.ly/4951VX Thu Sep 03 19:20:23 +0000 2009

Keeping Up With the Kardashians! "It's a lemonade-based cleanse. It's ready to go! I tried the pepper ones for... http://bit.ly/vXtgT Mon Sep 14 12:39:44 +0000 2009

When you absolutely, positively MUST fit into your favorite dress or jeans, QuickTrim® Fast Cleanse™ will help you... http://bit.ly/7wtIqI Thu Dec 10 21:37:42 +0000 2009

The Secrets to Creating Sustainable Lifestyle Changes http://www.quicktrim.ca/index.html Tue Feb 09 18:10:38 +0000 2010

Lose Weight Now! http://bit.ly/94VQeE Tue Feb 23 13:33:07 +0000 2010

Jump start your diet! Burn calories by day! Cleanse by night! http://www.quicktrim.ca/ http://bit.ly/a5kqP7 Thu Apr 15 14:09:31 +0000 2010

Hi Dolls... You all need to go over to quicktrimcontest.com and enter the quick trim lose to win contest! The prizes are AMAZING! Mon Nov 08 18:49:16 +0000 2010

Hey Guys want a chance to win $100 in QT products? Send out a tweet that says - Check out the "Lose to Win Contest" at http://zeemy.com/qtc Tue Nov 16 21:18:15 +0000 2010

QuickTrim Lose to Win Contest If you haven't signed up yet, do it now at http://www.quicktrimcontest.com See Real... http://fb.me/VXeHzYZH Thu Feb 17 19:35:57 +0000 2011

QUICKTRIM – LOSE TO WIN CONTEST • WIN $50,000 CASH • A TRIP TO MEET THE CARDASHIANS! • OPPORTUNITY TO APPEAR ON... http://fb.me/VF1lKpFv Thu Feb 17 22:24:53 +0000 2011

LOSE TO WIN CONTEST! AMANDA C. LOST 20 lbs on EXTREME BURN in 8 Weeks Will she be the one to win the $50,000 in... http://fb.me/AZLhh5pt Fri Feb 18 19:47:04 +0000 2011

LOSE TO WIN CONTEST! Suzi O. LOST 40 lbs on in 16 Weeks Shes Looking Great, feeling fabulous and participating!... http://fb.me/M1zMZ4sp Mon Feb 21 14:35:51 +0000 2011

LOSE TO WIN CONTEST! Will she be the one to win the $50,000 in CASH prize? Don't lose your chance REGISTER NOW at... http://fb.me/wzDeGZ7e Mon Feb 28 15:23:53 +0000 2011

Erica B. Lost 50 Lbs using Quicktrim Burn & Cleanse. http://fb.me/TlMwz8Ii Wed Apr 20 21:25:11 +0000 2011

Christopher T. Lost 118 lbs using Extreme Burn I was in a motorcycle accident and was in bed healing for 6 months... http://fb.me/xPRJvu3F Tue May 10 14:34:29 +0000 2011

The Kardashian sisters Quicktrim Photo session! http://t.co/U4WLNvx Wed Aug 17 14:13:23 +0000 2011

77.     Kourtney Kardashian has more than 5 million followers on Twitter, and she

has frequently tweeted messages promoting QuickTrim, including the following:

Behind the scenes at QuickTrim Ad Campaign. http://bit.ly/c0Iios Mon Apr 05 17:10:18 +0000 2010

@kimkardashian and I got to ride in the pace car! Its insane over 700k people at indy 500...wow! The quicktrim car is white and purple, #30. Sun May 30 18:25:40 +0000 2010

At the indy 500 with @kimkardashian and @scottdisick. Its madness here! Go quicktrim car rahal! Been watching this race since I was a kid. Sun May 30 15:13:55 +0000 2010

At QVC going live at 12:30ish to talk about Quicktrim fast shake and satisfy chews. Anyone gonna watch and buy some? I'm kinda nervous. Tue Sep 14 15:50:22 +0000 2010

QuickTrim's such a success! Register at http://quicktrimcontest.com for a chance to win $50,000 & be a QT spokesperson! Wed Jan 26 18:13:05 +0000 2011

QuickTrim is available in So. Africa at Dischem, CNA & Glomail! It's your secret weapon to help you lose weight & get the body you deserve! Fri Feb 11 20:20:03 +0000 2011

Happy Friday! Just ate a banana and about to take some Quicktrim. Not my usual breakfast of steel cut oats...switching it up! Fri Mar 25 15:26:34 +0000 2011

UGH!Tried 2start new workout routine today.Was so excited&my ishuffle battery is dead.Doing squats in my kitchen &taking Quicktrim instead. Thu Mar 31 14:48:02 +0000 2011

Just did an amazing pilates class with @KimKardashian. That and a little Quicktrim and my bikini bod will be ready in no time. Sun Apr 10 01:18:39 +0000 2011

Brushing teeth with Mason Dash. We had a major cuddle session this morning. Now about to take my Quicktrim and put some oats on the stove. Fri Apr 08 14:53:21 +0000 2011

Started my day with some pilates and Quicktrim. My whole day is better when I workout in the mornings! Who else is in bikini body mode? Wed Apr 13 18:56:02 +0000 2011

Quicktrim and gym! Love how they rhyme. Bikini body season in full affect. Who's ready? Thu Apr 21 21:47:14 +0000 2011

Early morning pilates and a quicktrim shake! Just had a salad and some iced green tea! #focused. Anyone else on the focused team with me? Wed Apr 27 21:53:40 +0000 2011

Early morning run & some Quicktrim.I almost got lost running because I haven't gotten used to my neighborhood yet..or it was just too early. Tue Apr 26 19:34:53 +0000 2011

Started my day w/ Quicktrim, but missed my morning jog bc had 2work early today..evening jog?! Its Monday! This sets the standard 4the week. Mon Apr 25 15:33:00 +0000 2011

Wow.I have gained almost 10 pounds since I stopped breast feeding.Time to step up my workout game & get over to Rite Aid for some Quicktrim! Tue May 10 03:13:41 +0000 2011

"@ravenrea: Night time beach jog! Bikini time! #beachbunnymode @KourtneyKardash" WOW!That's some motivation!What about some Quicktrim too? Sat May 07 04:36:04 +0000 2011

"@TracyHoward84: @KourtneyKardash we need some quicktrim in south africa. Let's go global with QuickTrim." U can get at clicks or dischem! Thu Jun 02 00:33:13 +0000 2011

After all these BBQs last weekend I need to start my Quicktrim again! Tomorrow it is on! Wed Jun 01 23:32:36 +0000 2011

Happy Wednesday! Starting my day with some warm water w lemon, steel cut oats w blueberries and quicktrim baby. I feel better already! Wed Jun 22 16:14:28 +0000 2011

"@KimKardashian: Starting QuickTrim today!Its officially summer.I want to really get in fab shape!Whose w me?" I AM!I AM!Let's workout too! Wed Jun 22 15:35:41 +0000 2011

"@Marion_Aisa_32:which quicktrim product should I start with? To help kick start my workout habits again n to help lose weight?" A CLEANSE! Wed Jun 22 05:39:51 +0000 2011

At MTV with @KhloeKardashian. My tiredness just hit me! I need a snack or something for some energy...where's my Quicktrim shake? Tue Jun 07 15:37:57 +0000 2011

Just got on the scale& gained 5 pounds after lots of traveling! Gonna read my SHAPE mag for motivation, take some Quicktrim and a NY stroll! Mon Jun 06 00:11:12 +0000 2011

Just went for a jog! First time in forever...it felt so good! Time for some Quicktrim and I'm a rockstar! Thu Jul 14 18:41:18 +0000 2011

Gotta lose those last few lbs? Walgreen's is having a special this week on QuickTrim's Extreme Burn - 19.99 each! Get some b4 they run out! Sun Aug 14 19:20:02 +0000 2011

**QuickTrim Products Are Illegally Distributed And Misbranded Under Federal Law**

78.     Under section 201(g)(1)(B) of the Food, Drug & Cosmetic Act (FDCA), 21

U.S.C. § 321(g)(1)(B), articles intended for use in the diagnosis, cure, mitigation, treatment,

or prevention of disease are drugs.  Under § 321(g)(1)(C), articles intended to affect the

structure or any function of the body of man are also classified as drugs.  The QuickTrim

Weight Loss System and each of its component products includes labeling suggesting the use

of QuickTrim for weight control and appetite suppression, and suggesting that each of the

seven component QuickTrim products is part of a "system" designed to work synergistically

to promote weight loss and weight control.  The QuickTrim Weight Loss System and each of

its component products are therefore "drugs" as defined by 21 U.S.C. § 321(g)(1)(B) and (C).

The FDA also classifies products that include caffeine as an ingredient for the specified use

of weight control as drugs.  *See* 21 C.F.R. § 310.545(a)(20).

79.     QuickTrim falls with the definition of a "new drug" because it "is not

generally recognized among experts … as safe and effective for use under the condition

prescribed, recommended, or suggested."  21 U.S.C. § 321(p)(1).  Thus, without FDA

approval, it is illegal to distribute QuickTrim in interstate commerce.  21 U.S.C. § 355(a).

80.     Similarly, federal law prohibits marketers of dietary supplements from making

any claim suggesting use of the supplement for the diagnosis, mitigation, treatment or cure of

a disease unless the claim is specifically authorized by an FDA finding that there is

"significant scientific agreement" to support the claim, or the claim is based on "authoritative

statements" from certain federal scientific bodies, such as NIH and the National Academy of

Sciences.  *See* Dietary Supplement Health Education Act ("DSHEA"), 21 U.S.C. § 343(r)(3).

81.     Federal law allows for statements of nutritional support referring to

representations about a dietary supplement's effect on the structure or function of the body

for maintenance of good health and nutrition – so-called structure/function claims – without

FDA authorization.  But structure/function claims are allowed only if the manufacturer has

substantiation that the claim is truthful and not misleading, and also prominently displays the

DSHEA disclaimer: "This statement has not been evaluated by the Food and Drug

Administration.  This product is not intended to diagnose, treat, cure, or prevent any disease."

Moreover, a structure/function claim may not "claim to diagnose, mitigate, treat, cure or prevent a specific disease or class of diseases."  21 U.S.C. § 343(r)(6).

82.     The claims identified above suggest the use of QuickTrim for weight control, appetite suppression, and to burn stored fats and decrease the appearance of cellulite.  None of these claims has been authorized by the FDA or any scientific body.

83.     To the extent that the claims identified above can be construed as structure/function claims not requiring FDA authorization or support from an authoritative scientific body, they nevertheless run afoul of DSHEA because Defendants' do not possess "substantiation" that these statements are truthful and not misleading.

84.     QuickTrim is thus "misbranded" and bears a "false or misleading label" under 21 U.S.C. § 343.

**<u>Windmill's Role</u>**

85.     Windmill is a distributor and seller of the QuickTrim Weight Loss System and participated in creating the product formulation, dosage form, delivery system, branding, packaging and design, logistics and distribution, marketing and merchandising, and advertising.  Windmill also sold QuickTrim through the creation of circulars, price stickers, promotional calendars, company-supported sale events, point-of-sale and point-of-purchase materials and one-on-one field support.  Windmills activities caused the sale of QuickTrim through more than 100,000 retail venues including club, food, drug, mass market, health food stores.

**QuickTrim LLC And Mr. Tisi's Role**

86.     QuickTrim, LLC owns the intellectual property rights to the QuickTrim Weight Loss System, and was involved the creation of the product and its labeling, and it sold the product.

87.     Christopher Tisi is the creator, owner, principal investor, CEO and sole member of QuickTrim, LLC.  He also is or has been the principal of at least 27 different Florida-registered limited liability companies, all of which share a common business address with QuickTrim, LLC.

88.     Quick Trim, LLC was voluntarily dissolved on December 27, 2011. Thereafter it continued to be listed as a distributor on QuickTrim's labels, and continued to sell QuickTrim through its websites, including including www.quicktriminternational.com, www.qtdiet.com, and www.kardashianquicktrim.com, as well as through numerous third-party retailers.  All conduct done in the name of "QuickTrim LLC" that post-dates the dissolution of that entity was done by Mr. Tisi personally.

89.     Prior to the dissolution of QuickTrim LLC, the entity was dominated and controlled by Mr. Tisi to such an extent that the entity had no independent existence and was in fact the alter ego of Mr. Tisi, which was used to accomplish the fraudulent purposes described herein.

**The Retailers' Roles**

90.     CVS Pharmacy, Inc., Walmart Corp., GNC Corp., Walgreen Co., Amazon.com, Inc., and Drugstore.com, Inc. (the "Retailers") each (1) displayed QuickTrim and its false labels on their store shelves and/or websites, (2) utilized point-of-sale and point-of-purchase materials provided by Windmill and QuickTrim LLC in their stores and/or

websites, (3) reviewed and approved the advertising materials promoting the sale of QuickTrim products, including many such advertisements which bore the retailers' names, logos and trademarks, and (4) sold QuickTrim products to end users.

91.     GNC, in particular, also participated in the creation of QuickTrim products, pre-launch product announcements, and hosting of in-store events promoting QuickTrim's launch.

## FACTUAL ALLEGATIONS CONCERNING CLASS REPRESENTATIVES

**Andeia Cowan's Purchase Of QuickTrim**

92.     Plaintiff Andeia Cowan purchased QuickTrim Burn and Cleanse 14 Day Diet System for $39.99, two bottles of QuickTrim Fast Cleanse 48 Hour Super Diet Detox for $26.23 each and QuickTrim Extreme Burn (120 Capsule Bottle) for $34.05 from online retailer Amazon.com.  She also purchased QuickTrim Fast Shakes in Vanilla and Chocolate from online retailer Drugstore.com for $19.99 each.

93.     Ms. Cowan had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

94.     Ms. Cowan would not have purchased QuickTrim if she had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

**Luis Shepherd's Purchase Of QuickTrim**

95.    Plaintiff Luis Shepherd purchased QuickTrim Extreme Burn for $39.99 at a CVS retail store in Miami Beach, Florida.

96.    Mr. Shepherd had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

97.    Mr. Shepherd would not have purchased QuickTrim if he had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

98.    Prior to filing this action, Mr. Shepherd, by and through his counsel, provided defendants with written notice of his claims pursuant to 15 U.S.C. § 2310(e) and Fla. Stat. § 672.607(3)(a).  Mr. Shepherd also notified defendants that he was acting on behalf of a class defined as all persons in the United States who purchased QuickTrim.

**Holly Viola's Purchase Of QuickTrim**

99.    Plaintiff Holly Viola purchased QuickTrim Burn and Cleanse 14 Day Metabolic Makeover for approximately $29.99 at a Wal-Mart retail store in Destin, Florida.

100.    Ms. Viola had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

101.    Ms. Viola would not have purchased QuickTrim if she had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

**Alexsandra Cerda's Purchase Of QuickTrim**

102.    Plaintiff Alexsandra Cerda purchased QuickTrim Burn and Cleanse 14 Day Metabolic Makeover for approximately $29.99 from a GNC retail store in Paso Robles, California.

103.    Ms. Cerda had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

104.    Ms. Cerda would not have purchased QuickTrim if she had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

105.    Prior to filing this action Ms. Cerda, by and through her counsel, provided Defendants with written notice of her claims pursuant to 15 U.S.C. § 2310(e) and California Civil Code § 1782.  Ms. Cerda also notified Defendants that she was acting on behalf of a class defined as all persons in the United States that purchased QuickTrim, and a subclass of class members that purchased QuickTrim in California.

**Cynthia Hogan's Purchase of QuickTrim**

106.    Plaintiff Cynthia Hogan purchased QuickTrim Extreme Burn for approximately $29.99 and QuickTrim Burn & Cleanse for approximately $29.99 from a CVS retail store in Illinois.

107.    Ms. Hogan had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

108.    Ms. Hogan would not have purchased QuickTrim if she had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

**Debbie Vongphachanh's Purchase Of QuickTrim**

109.    Plaintiff Vongphachanh purchased QuickTrim Burn & Cleanse for approximately $29.99 and QuickTrim Fast Cleanse 48 Hour Super Diet Detox in Lemonade Flavor for approximately $19.99 from GNC and Wal-Mart retail stores in Colorado.

110.    Ms. Vongphachanh had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

111.    Ms. Vongphachanh would not have purchased QuickTrim if she had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

**Tebytha Chan's Purchase Of QuickTrim**

112.    Plaintiff Tebytha Chan purchased QuickTrim Extreme Burn for approximately $19.99 from a GNC retail store in Nevada and purchased QuickTrim Burn & Cleanse for approximately $29.99 from a Walgreens store in Nevada.

113.    Ms. Chan had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

114.    Ms. Chan would not have purchased QuickTrim if she had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

**LaVada Fallon's Purchase Of QuickTrim**

115.    Plaintiff LaVada Fallon purchased QuickTrim Burn and Cleanse 14 Day Metabolic Makeover for approximately $29.99 from a Wal-Mart retail store in Elk Grove, California.

116.    Ms. Fallon had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

Ms. Fallon would not have purchased QuickTrim if she had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated

**Elizabeth Freedman's Purchase Of QuickTrim**

117.     Plaintiff Elizabeth Freedman purchased QuickTrim Burn & Cleanse for approximately $29.99 from a Walgreens retail store in Santa Monica, California.

118.     Ms. Freedman had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism."

119.     Ms. Freedman would not have purchased QuickTrim if she had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

## CLASS REPRESENTATION ALLEGATIONS

120.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the QuickTrim Weight Loss System or any of its component products (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

121.     Plaintiffs Alexsandra Cerda, LaVada Fallon, and Elizabeth Freedman also seek to represent a subclass of all Class members who purchased the product in California (the "California Subclass").

122.      Plaintiffs Luis Shepherd and Holly Violoa also seek to represent a subclass of all Class members who purchased the product in Florida (the "Florida Subclass").

123.     Plaintiff Andeia Cowan also seeks to represent a subclass of all Class members who purchased the product in New York (the "New York Subclass").

124.    Plaintiff Cynthia Hogan also seeks to represent a subclass of all Class members who purchased the product in Illinois (the "Illinois Subclass").

125.    Plaintiff Debbie Vongphachanh also seeks to represent a subclass of all Class members who purchased the product in Colorado (the "Colorado Subclass").

126.    Plaintiff Tebytha Chan also seeks to represent a subclass of all Class members who purchased the product in Nevada (the "Nevada Subclass").

127.    Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

128.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendants' labeling, marketing and promotion of QuickTrim is false, misleading, and unsubstantiated.

129.    The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendants' false, misleading and unsubstantiated marketing and promotional materials, purchased QuickTrim, and suffered a loss as a result of that purchase.

130.    Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they

intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

131.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### (Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.)

132.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 131 as if fully set forth herein.

133.    Plaintiffs bring this Count I individually and on behalf of the members of the Class and Subclasses against all Defendants.

134.    QuickTrim products are consumer products as defined in 15 U.S.C. § 2301(1).

135.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

136.    Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

137.    In connection with the sale of the QuickTrim products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), by making the Express Warranties.

138.    In fact, QuickTrim products do not conform to the Express Warranties because each of the Express Warranties is false, misleading, and unsubstantiated, and there there is no competent and reliable scientific evidence supporting any of those statements.

139.    By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

140.    Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased QuickTrim products if the true facts had been known.

## STATE LAW COUNTS

141.    Each of the state law counts is asserted on behalf of each state subclass.  So, for example, the California counts are asserted on behalf of the California Subclass, and the New York counts on behalf of the New York Subclass.

## CALIFORNIA
## COUNT II
**(Consumers Legal Remedies Act (CLRA), Calif. Civil Code §§ 1750, et. seq.)**

142.    Plaintiffs repeat the allegations contained in paragraphs 1 through 141 as if fully set forth herein.

143.    Plaintiffs bring this Count II on behalf of the members of the Class and Subclasses against all Defendants.

144.     CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendants violated this provision by making the Misrepresentations.

145.     CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendants violated this provision by making the Misrepresentations.

146.     Plaintiffs and the California Subclass members suffered injuries caused by Defendants' misrepresentations because they would not have purchased QuickTrim products if the true facts had been known.

147.     On February 24, 2012, prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complied in all respects with California Civil Code § 1782(a).  Plaintiff Alexsandra Cerda, by and through her counsel, sent defendants a letter *via* certified mail, return receipt requested, advising Defendants they were in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

148.     Wherefore, Plaintiffs seek all remedies available under the CLRA.

<u>**COUNT III**</u>
**(Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)**

149.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

150.     Plaintiffs bring this Count III on behalf of the members of the Class and Subclasses against all Defendants.

151.    Defendants are subject to the Unfair Competition Law ("UCL"), Bus. & Prof.
Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean
and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or
misleading advertising …."

152.    Defendants' conduct, described herein, violated the "unlawful" prong of the
UCL by violating the FDCA, DSHEA, and regulations promulgated thereunder, including
but not limited to 21 C.F.R. § 310.45(a)(20).

153.    Defendants' conduct, described herein, violated the "unfair" prong of the UCL
by violating the policy or spirit of the FDCA, DSHEA, and regulations promulgated
thereunder, including but not limited to 21 CFR § 310.45(a)(20).

154.    Defendants' conduct, described herein, violated the "fraudulent" prong of the
UCL by making the Misrepresentations.

155.    Plaintiffs and California Subclass members suffered lost money or property as
a result of Defendants' UCL violations because they would not have purchased QuickTrim
products if the true facts concerning their safety and efficacy had been known.

### COUNT IV
**(False Advertising Law, Calif. Business & Professions Code § 17500 *et seq.*)**

156.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if
fully set forth herein.

157.    Plaintiffs bring this Count IV on behalf of the members of the Class and
Subclasses against all Defendants.

158.     California's False Advertising Law, Bus. & Prof. Code § 17500, *et seq.*,
makes it "unlawful for any person to make or disseminate or cause to be made or
disseminated before the public in this state, ... in any advertising device ... or in any other

manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

159.     Defendants committed acts of false advertising, as defined by §17500, by making the Misrepresentations.

160.     Defendants knew or should have known, through the exercise of reasonable care that the Misrepresentations were untrue and misleading.

161.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

162.     Plaintiffs and California Subclass members suffered lost money or property as a result of Defendants' FAL violations because they would not have purchased QuickTrim products if the true facts had been known.

## COUNT V
### (Breach of Express Warranty, Cal. Com. Code § 2313)

163.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

164.     Plaintiffs bring this Count V individually and on behalf of the members of the Class and Subclasses against all Defendants.

165.     Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that QuickTrim products were fit for their intended purpose by making the Express Warranties.

166.     In fact, QuickTrim products are not fit for such purposes because each of the Express Warranties is false, misleading, and unsubstantiated, and there is no competent and reliable scientific evidence supporting any of these statements.

167.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

### COUNT VI
### (Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)

168.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

169.     Plaintiffs bring this Count VI individually and on behalf of the members of the Class and Subclasses against all Defendants.

170.     Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

171.     Defendants breached the warranty implied in the contract for the sale of the QuickTrim products in that QuickTrim products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because there is no competent and reliable scientific evidence that QuickTrim products are safe and effective treatments for weight loss or appetite suppression.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

172.    In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased QuickTrim products for use as treatments for weight loss and appetite suppression.

173.    The QuickTrim products were not altered by Plaintiffs and Class members.

174.    The QuickTrim products were defective when they left the exclusive control of Defendants.

175.    Defendants knew the QuickTrim products would be purchased and used without additional testing for safety or efficacy by Plaintiffs and Class members.

176.    The QuickTrim products were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

177.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT VII
### (Unjust Enrichment)

178.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

179.    Plaintiffs bring this Count VII individually and on behalf of the members of the Class and Subclasses against all Defendants.

180.    Plaintiffs and Class members conferred benefits on Defendants by purchasing QuickTrim products.

181.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of QuickTrim products.  Retention of those

moneys under these circumstances is unjust and inequitable because Defendants misrepresented that QuickTrim was a safe and effective treatment for weight loss and appetite suppression when in fact it was not, which caused injuries to Plaintiffs and Class members because they would not have purchased QuickTrim products if the true facts had been known.

182.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

### COLORADO
### COUNT VIII
**(Colorado Consumer Protection Act, Col. Rev. Stat. § 6-1-101 et seq.**

183.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

184.    Plaintiffs bring this Count VIII on behalf of the members of the Class and Subclasses against all Defendants.

185.    This cause of action is brought pursuant to the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101 *et seq.*

186.    Defendants are "persons" under § 6-1-102(6) of the Colorado CPA.

187.    Plaintiff and Class members are "consumers" under § 6-1-113(a) of the Colorado CPA.

188.    In the course of their business, Defendants participated in deceptive trade practices that violated the Colorado CPA, as described herein.

189.    As alleged above, Defendants made numerous material statements about the safety and efficacy of QuickTrim products for weight loss and appetite suppression that were either false or misleading.  Each of these statements contributed to the deceptive context of Defendants' unlawful representations as a whole.

190.    Defendants engaged in deceptive trade practices prohibited by the Colorado CPA, including (1) knowingly making false representations as to the characteristics, uses, and benefits of QuickTrim products; (2) representing that QuickTrim products are of a particular standard, quality, and grade even though Defendants knew or should have known they are not; and (3) failing to disclose material information concerning QuickTrim products that was known to Defendants at the time of advertisement or sale with the intent to induce Plaintiffs and Class members to purchase the products.

191.    Defendants knew that QuickTrim products were not safe and effective treatments for weight loss or appetite suppression.  Defendants nevertheless failed to disclosure this information to Plaintiffs and members of the Class despite having a duty to do so.

192.    Defendants' practices significantly impact the public as actual consumers of the QuickTrim products are not safe or effective treatments for weight loss or appetite suppression and Plaintiffs and Class members would not have purchased QuickTrim products if the true facts had been known.

193.    Whether or not a weight loss product is safe and effective for the treatment of weight loss and appetite suppression are facts that a reasonable consumer would consider important in selecting a weight loss product.  When Plaintiffs bought QuickTrim products for

personal, family, or household purposes, they reasonably expected the products would provide safe and effective weight loss and appetite suppression.

194.     Defendants' deceptive practices were likely and did in fact deceive reasonable consumers, including Plaintiffs, about the safety and efficacy of QuickTrim products.

195.     Plaintiff and the Class have suffered injury-in-fact to their legally protected interests as a result of Defendants' violations of the Colorado CPA detailed above. Plaintiffs and Class members paid for QuickTrim products which they would not have purchased had they known the true facts.

196.     Pursuant to § 6-1-113(2) of the Colorado CPA, Plaintiffs seek monetary relief against Defendants as measures as the greater of (a) the amount of actual damages sustained, (b) statutory damages in the amount of $500 for each Plaintiff, or (c) three times the amount of actual damages if Plaintiffs establish that Defendants engaged in bad faith conduct.

## COUNT IX
### (Breach of Express Warranty, Col. Rev. Stat. § 4-2-313)

197.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

198.     Plaintiffs bring this Count IX on behalf of the members of the Class and Subclasses against all Defendants.

199.     This cause of action is brought pursuant to Col. Rev. Stat. § 4-2-313.

200.     Defendants are and were at all relevant times merchants under Col. Rev. Stat. § 4-2-104.

201.     Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that QuickTrim products were fit for their intended purpose by making the Express Warranties.

202.    In fact, QuickTrim products are not fit for such purposes because each of the

Express Warranties is false, misleading, and unsubstantiated, and there is no competent and

reliable scientific evidence supporting any of these statements.

203.    Plaintiffs and Class members were injured as a direct and proximate result of

Defendants' breach because they would not have purchased QuickTrim products if the true

facts concerning their safety and efficacy had been known.

**COUNT X**

**(Breach of Implied Warranty of Merchantability, Col. Rev. Stat. § 4-2-314)**

204.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if

fully set forth herein.

205.    Plaintiffs bring this Count X on behalf of the members of the Class and

Subclasses against all Defendants.

206.    This cause of action is brought pursuant to Col. Rev. Stat. § 4-2-314 *et seq.*

207.    Defendants are and were at all relevant times merchants under Col. Rev. Stat.

§ 4-2-104.

208.    Defendants as the designer, manufacturer, marketers, distributors, and/or

sellers impliedly warranted that QuickTrim products were fit for their intended purpose in

that were safe and effective treatments for weight loss and appetite suppression.

209.    Defendants breached the warranty implied in the contract for the sale of the

QuickTrim products in that QuickTrim products could not pass without objection in the trade

under the contract description, the goods were not of fair average quality within the

description, and the goods were unfit for their intended and ordinary purpose because there is

no competent and reliable scientific evidence that QuickTrim products are safe and effective

55

treatments for weight loss or appetite suppression.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

210.    In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased QuickTrim products for use as treatments for weight loss and appetite suppression.

211.    The QuickTrim products were not altered by Plaintiffs and Class members.

212.    The QuickTrim products were defective when they left the exclusive control of Defendants.

213.    Defendants knew the QuickTrim products would be purchased and used without additional testing for safety or efficacy by Plaintiffs and Class members.

214.    The QuickTrim products were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

215.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT XI
### (Breach of Common Law Warranty)

216.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

217.    Plaintiffs bring this Count XI on behalf of the members of the Class and Subclasses against all Defendants.

218.     To the extent Defendants' commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted by Colorado, Plaintiffs plead in the alternative under common law warranty and contract law.

219.     Defendants breached this warranty or contract obligation by warranting that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

220.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

### FLORIDA
### COUNT XII
**(Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et seq.)**

221.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

222.     Plaintiffs bring this Count XII on behalf of the members of the Class and Subclasses against all Defendants.

223.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (FDUPTA).  The express purpose of FDUPTA is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

224.     Plaintiff and Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

225.   Defendants were engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

226.   The sale of QuickTrim products constituted "consumer transactions" within the scope of the Fla. Stat. §§ 501.201 to 501.213.

227.   Fla. Stat. § 501.204(1) declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

228.   Fla. Stat. § 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."  Defendants' unfair and deceptive practices are likely to mislead – and have mislead – the consumer acting reasonably in the circumstances, and violate Fla. Stat. § 501.204 and 21 U.S.C. § 352.

229.   Defendants have violated the FDUPTA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers, by making the Misrepresentations.

230.   Plaintiff and the Class have been aggrieved by Defendants' unfair and deceptive practices in that they paid for QuickTrim products, which they would not have purchased had they known the true facts.

231.   The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants.

232.     Pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

233.     Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff and the Class make claims for damages and attorneys' fees and costs.

## COUNT XIII
### (Breach of Express Warranty, Fla. Stat. § 672.313)

234.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

235.     Plaintiffs bring this Count XIII on behalf of the members of the Class and Subclasses against all Defendants.

236.     This cause of action is brought pursuant to Fla. Stat. § 672.313.

237.     Defendants are and were at all relevant times merchants under Fla. Stat. § 672.313.

238.     Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that QuickTrim products were fit for their intended purpose by making the Express Warranties.

239.     In fact, QuickTrim products are not fit for such purposes because each of the Express Warranties is false, misleading, and unsubstantiated, and there is no competent and reliable scientific evidence supporting any of these statements.

240.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT XIV
### (Breach of Implied Warranty of Merchantability, Fla. Stat. § 672.314)

241.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

242.    Plaintiffs bring this Count XIV on behalf of the members of the Class and Subclasses against all Defendants.

243.    This cause of action is brought pursuant to Fla. Stat. § 672.314.

244.    Defendants are and were at all relevant times merchants under Fla. Stat. § 672.343.

245.    Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

246.    Defendants breached the warranty implied in the contract for the sale of the QuickTrim products in that QuickTrim products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because there is no competent and reliable scientific evidence that QuickTrim products are safe and effective treatments for weight loss or appetite suppression.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

247.    In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased QuickTrim products for use as treatments for weight loss and appetite suppression.

248.    The QuickTrim products were not altered by Plaintiffs and Class members.

249.     The QuickTrim products were defective when they left the exclusive control of Defendants.

250.     Defendants knew the QuickTrim products would be purchased and used without additional testing for safety or efficacy by Plaintiffs and Class members.

251.     The QuickTrim products were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

252.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT XV
### (Breach of Contract/Common Law Warranty)

253.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

254.     Plaintiffs bring this Count XV on behalf of the members of the Class and Subclasses against all Defendants.

255.     To the extent Defendants' commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted by Florida, Plaintiffs plead in the alternative under common law warranty and contract law.

256.     Defendants breached this warranty or contract obligation by warranting that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

257.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would

not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

**ILLINOIS**
**COUNT XVI**
**(Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* and 720 Ill. Comp. Stat. 295/1A)**

258.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

259.     Plaintiffs bring this Count XVI on behalf of the members of the Class and Subclasses against all Defendants.

260.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 prohibits unfair and deceptive acts or practices in connection with any trade or commerce.  Specifically the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

261.     Defendants are "persons" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(c).

262.     Plaintiffs are "consumers" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(e).

263.     Defendants' conduct caused Plaintiffs' damages as alleged.

264.     As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees pursuant to 815 Ill. Comp. Stat. 505/1, *et seq.*

**COUNT XVII**

**(Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.* and 720 Ill. Comp. Stat. 295/1A)**

265.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

266.    Plaintiffs bring this Count XVII on behalf of the members of the Class and Subclasses against all Defendants.

267.    815 Ill. Comp. Stat. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;…(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;…(7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;…[and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

268.    Defendants are "persons" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

269.    The QuickTrim products marketed and sold by Defendants were not of the particular sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities represented by Defendants.

270.    The QuickTrim products sold to Plaintiffs and members of the Class were not of the particular standard, quality, and/or grade represented by Defendants.

271.    Defendants' conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

272.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the Class have been damaged in an amount to be proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

**COUNT XVIII**
**(Breach of Implied Warranty of Merchantability, 810 Ill. Comp. Stat. 5/2-314, and 810 Ill. Comp. Stat. 5/2A-212)**

273.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

274.    Plaintiffs bring this Count XVIII on behalf of the members of the Class and Subclasses against all Defendants.

275.    Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

276.    Defendants breached the warranty implied in the contract for the sale of the QuickTrim products in that QuickTrim products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because there is no competent and reliable scientific evidence that QuickTrim products are safe and effective treatments for weight loss or appetite suppression.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

277.     In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased QuickTrim products for use as treatments for weight loss and appetite suppression.

278.     The QuickTrim products were not altered by Plaintiffs and Class members.

279.     The QuickTrim products were defective when they left the exclusive control of Defendants.

280.     Defendants knew the QuickTrim products would be purchased and used without additional testing for safety or efficacy by Plaintiffs and Class members.

281.     The QuickTrim products were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

282.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

### COUNT XIX
### (Breach of Express Warranty, 810 Ill. Comp. Stat. 5/2-313)

283.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

284.     Plaintiffs bring this Count XIX on behalf of the members of the Class and Subclasses against all Defendants.

285.     Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that QuickTrim products were fit for their intended purpose by making the Express Warranties.

286.     In fact, QuickTrim products are not fit for such purposes because each of the Express Warranties is false, misleading, and unsubstantiated, and there is no competent and reliable scientific evidence supporting any of these statements.

287.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT XX
### (Breach of Contract)

288.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

289.     Plaintiffs bring this Count XX on behalf of the members of the Class and Subclasses against all Defendants.

290.     To the extent Defendants' commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted by Illinois, Plaintiffs plead in the alternative under common law warranty and contract law.

291.     Defendants breached this warranty or contract obligation by warranting that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

292.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

**NEVADA**
**COUNT XXI**
**(Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*)**

293.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

294.    Plaintiffs bring this Count XXI on behalf of the members of the Class and Subclasses against all Defendants.

295.    Defendants are "persons" as required under the statute.

296.    Defendants' actions as set forth above occurred in the course of business.

297.    The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*, prohibits unfair or deceptive consumer sales practices.

298.    The Nev. Rev. Stat. §598.0915 provides that a person engages in a "deceptive trade practice" if , in the course of his or her business or occupation, her or she does any of the following, including: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale of lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model;" or "15. Knowingly makes any other false representations in a transaction."

299.    As alleged above, Defendants made numerous material statements about the safety and efficacy of QuickTrim products for weight loss and appetite suppression that were either false or misleading.  Each of these statements contributed to the deceptive context of Defendants' unlawful representations as a whole.

300.    Defendants knew that QuickTrim products were not safe and effective treatments for weight loss or appetite suppression.  Defendants nevertheless failed to disclosure this information to Plaintiffs and members of the Class despite having a duty to do so.

301.    Defendants' deceptive practices were likely and did in fact deceive reasonable consumers, including Plaintiffs, about the safety and efficacy of QuickTrim products.

302.    Plaintiff and the Class have suffered injury-in-fact to their legally protected interests as a result of Defendants' violations detailed above.  Plaintiffs and Class members paid for QuickTrim products which they would not have purchased had they known the true facts.

## COUNT XXII
### (Breach of Express Warranty, Nev. Rev. Stat. §104.2313)

303.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

304.    Plaintiffs bring this Count XXII on behalf of the members of the Class and Subclasses against all Defendants.

305.    Defendants are and at all relevant times were merchants under the Uniform Commercial Code.

306.    Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that QuickTrim products were fit for their intended purpose by making the Express Warranties.

307.    In fact, QuickTrim products are not fit for such purposes because each of the Express Warranties is false, misleading, and unsubstantiated, and there is no competent and reliable scientific evidence supporting any of these statements.

308.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT XXIII
### (Breach of Implied Warranty of Merchantability, Nev. Rev. Stat. §104.2314)

309.     Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

310.     Plaintiffs bring this Count XXIII on behalf of the members of the Class and Subclasses against all Defendants.

311.     Defendants are and at all relevant times were merchants under the Uniform Commercial Code.

312.     Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

313.     Defendants breached the warranty implied in the contract for the sale of the QuickTrim products in that QuickTrim products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because there is no competent and reliable scientific evidence that QuickTrim products are safe and effective treatments for weight loss or appetite suppression.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

314.     In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased QuickTrim products for use as treatments for weight loss and appetite suppression.

315.    The QuickTrim products were not altered by Plaintiffs and Class members.

316.    The QuickTrim products were defective when they left the exclusive control of Defendants.

317.    Defendants knew the QuickTrim products would be purchased and used without additional testing for safety or efficacy by Plaintiffs and Class members.

318.    The QuickTrim products were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

319.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT XXIV
### (Breach of Contract/Common Law Warranty)

320.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

321.    Plaintiffs bring this Count XXIV on behalf of the members of the Class and Subclasses against all Defendants.

322.    To the extent Defendants' commitment is deemed not to be a warranty under Nevada's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.

323.    Defendants breached this warranty or contract obligation by warranting that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

324.    As a direct and proximate cause of Defendants' breach of the implied

warranty, Plaintiffs and Class members have been injured and harmed because they would

not have purchased QuickTrim products if the true facts concerning their safety and efficacy

had been known.

## COUNT XXV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

325.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if

fully set forth herein.

326.    Plaintiffs bring this Count XXV on behalf of the members of the Class and

Subclasses against all Defendants.

327.    As set forth above, Plaintiffs and Class members have entered into individual

sales transactions and agreements with Defendants for the purchase of QuickTrim products.

328.    Plaintiffs and the Class have fully performed their obligations with

Defendants under such transactions and agreements.

329.    At all times, Defendants owed Plaintiffs and the Class a duty to exercise and

act in good faith and deal fairly with them in the marketing and sale of QuickTrim products.

330.    Defendants have breached these duties and obligations in the manner and

particulars set forth above, including, but not limited to, warranting that QuickTrim products

were fit for their intended purpose in that were safe and effective treatments for weight loss

and appetite suppression.

331.    As a direct and proximate cause of Defendants' failure to abide and comply

with their obligations and duties, Plaintiffs and Class members have suffered pecuniary

damages because they would not have purchased QuickTrim products if the true facts

concerning their safety and efficacy had been known.

71

## NEW YORK
## COUNT XXVI
### (Deceptive Acts or Practices, New York Gen. Bus. Law § 349)

332.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

333.    Plaintiffs bring this Count XXVI on behalf of members of the Class and Subclasses against all Defendants.

334.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making the Misrepresentations.

335.    The foregoing deceptive acts and practices were directed at consumers.

336.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the safety and efficacy of QuickTrim products to induce consumers to purchase those products.

337.    Plaintiff Andeia Cowan and members of the New York Subclass were injured as a result because they paid for QuickTrim products, which they would not have purchased had they known the true facts.

338.    On behalf of herself and other members of the New York Subclass, Andeia Cowan seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

## COUNT XXVII
### (Breach of Express Warranty, N.Y. U.C.C.§ 2-313)

339.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

340.    Plaintiffs bring this Count XXVII on behalf of the members of the Class and Subclasses against all Defendants.

341.    Defendants are and were at all relevant times merchants under N.Y. U.C.C. § 2-313.

342.    Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that QuickTrim products were fit for their intended purpose by making the Express Warranties.

343.    In fact, QuickTrim products are not fit for such purposes because each of the Express Warranties is false, misleading, and unsubstantiated, and there is no competent and reliable scientific evidence supporting any of these statements.

344.    Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT XXVIII
### (Breach of Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314)

345.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

346.    Plaintiffs bring this Count XXVIII on behalf of the members of the Class and Subclasses against all Defendants.

347.    Defendants are and were at all relevant times merchants under N.Y. U.C.C. § 2-313.

348.    Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

73

349.    Defendants breached the warranty implied in the contract for the sale of the QuickTrim products in that QuickTrim products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because there is no competent and reliable scientific evidence that QuickTrim products are safe and effective treatments for weight loss or appetite suppression.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

350.    In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased QuickTrim products for use as treatments for weight loss and appetite suppression.

351.    The QuickTrim products were not altered by Plaintiffs and Class members.

352.    The QuickTrim products were defective when they left the exclusive control of Defendants.

353.    Defendants knew the QuickTrim products would be purchased and used without additional testing for safety or efficacy by Plaintiffs and Class members.

354.    The QuickTrim products were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

355.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## COUNT XXIX
### (Breach of Contract/Common Law Warranty)

356.    Plaintiffs repeat the allegations contained in the paragraphs 1 through 141 as if fully set forth herein.

357.    Plaintiffs bring this Count XXIX on behalf of the members of the Class and Subclasses against all Defendants.

358.    To the extent Defendants' commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.

359.    Defendants breached this warranty or contract obligation by warranting that QuickTrim products were fit for their intended purpose in that were safe and effective treatments for weight loss and appetite suppression.

360.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased QuickTrim products if the true facts concerning their safety and efficacy had been known.

## RELIEF DEMANDED

361.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

B.    For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

D.      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

362.    Plaintiffs demand a trial by jury on all claims so triable.

Dated:  May 4, 2012.                                Respectfully submitted,

                                                    **BURSOR & FISHER, P.A.**

                                            By: _____
                                                        Scott A. Bursor

                                            Scott A. Bursor (SB1141)
                                            Joseph I. Marchese (JM1976)
                                            369 Lexington Avenue, 10th Floor
                                            New York, NY 10017
                                            Tel:  212-989-9113
                                            Fax: 212-989-9163
                                            E-Mail:  scott@bursor.com
                                                        jmarchese@bursor.com

I, Alexsandra Cerda, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in the Southern District of New York.

2.      While living in California, I purchased QuickTrim Burn and Cleanse 14 Day Metabolic Makeover for approximately $29.99 from a GNC retail store in Paso Robles, California. I had seen the television and magazine advertisements featuring Kim Kardashian, Khloe Kardashian-Odom, and Kourtney Kardashian, I had read the label on the QuickTrim packaging, and purchased QuickTrim in reliance on the claims that it was a safe and effective "sustained release weight loss formula" that would "help burn calories" and "help support a healthy metabolism. The representations made in those advertisements were substantial factors influencing my decision to purchase QuickTrim.  I would not have purchased QuickTrim if I had known that the product and its ingredients were not safe and effective treatments for weight loss, and that the representations concerning the purported benefits of the product were unsubstantiated.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on May  4  , 2012 at Paso Robles, California.

ALEXSANDRA CERDA